UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re

JEREMY PABLO HOLLIS and
HILLARY JEAN HOLLIS,

          Debtors.

Case No. 13-20484

Chapter 7

_____

MEMORANDUM DECISION ON DEBTORS' OBJECTION TO
UNITED STATES DEPARTMENT OF AGRICULTURE, RURAL HOUSING SERVICE'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY
_____

      This matter came before the Court on the United States Department of Agriculture, Rural Housing Service's motion for relief from the automatic stay to effectuate a transfer of funds under the Treasury Offset Program. The debtors opposed the motion and the parties filed briefs and related documents supporting their respective positions. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

BACKGROUND

      The following facts are not in dispute. On June 24, 2005, the debtors obtained a loan from Assured Mortgage, Inc., for the purchase of residential real estate located in Berlin, Wisconsin. This loan was made pursuant to the United States Department of Agriculture, Rural Development, Rural Housing Service (RHS), "Request for Single Family Housing Loan Guarantee," Form RD 1980-21.

      The request for loan guarantee form signed by the debtors contains a provision that

provides that the borrowers would reimburse the Agency for any loss claim that RHS paid to the lender in conjunction with the borrowers' loan. The promise by the borrowers to reimburse the Agency for any loss claim paid is on the second page of the Form directly under a section entitled "Applicant(s) Acknowledgments and Certifications" and provides as follows:

> I (We) certify and acknowledge that if the Agency pays a loss claim on the requested loan to the lender, I (We) will reimburse the Agency for that amount. If I (We) do not, the Agency will use all remedies available to it, including those under the Debt Collection Improvement Act, to recover on the Federal debt directly from me (us). The Agency's right to collect is independent of the lender's right to collect under the guaranteed note and will not be affected by any release by the lender of my (our) obligation to repay the loan. Any Agency collection under this paragraph will not be shared with the lender.

(Form RD 1980-21, dated May 9, 2005).

On April 5, 2007, JP Morgan Chase Bank, NA, filed a foreclosure action in Green Lake County against the debtors. The judgment of foreclosure was entered on May 29, 2007. The property was sold at sheriff's sale, and the sale was confirmed on April 15, 2008. On January 7, 2009, the United States paid the loss claim to JP Morgan Chase Bank, NA, in the sum of $40,353.80, and the debtors became indebted to RHS for the same amount. On February 14, 2009, the debtors were given notice that the loss claim debt had been transferred to the Treasury Offset Program. The same letter also notified the debtors of their right to request a review within 60 days of that letter if they believed they did not owe the debt shown. Apparently, no such request was made.

The United States, acting through the Internal Revenue Service, became indebted to the debtors in the sum of $3,716.00, as a result of the debtors' 2012 tax overpayment. On January 16, 2013, the debtors filed this chapter 7 petition. The debtors did not list the RHS obligation on their bankruptcy schedules. The debtors' Schedule B lists an estimated income tax refund of

2

$2,000.00, and they claimed that same amount exempt on Schedule C.

On March 7, 2013, the Treasury Department transferred $3,699.00[1] to RHS, under the Treasury Offset Program. RHS was unaware of the debtors' bankruptcy filing and applied the funds to the debtors' account. However, when RHS became aware of the bankruptcy, it removed the funds from the debtors' account and placed them in "Unapplied Funds" where the funds are currently posted pending this motion. The balance due on the loss claim, as of the petition date, was $34,711.67.

At the May 13, 2013, preliminary hearing on the matter, the issue before the Court was narrowed to whether RHS has a right to set off, postpetition, the debtors' prepetition unliquidated 2012 federal income tax refund against a dischargeable prepetition obligation.

## ARGUMENTS

*Rural Housing Service's Argument*

The United States argues that it has met the elements required for setoff, namely, (1) the debt owed by the creditor to the debtor arose prior to the commencement of the bankruptcy case, (2) the claim of the creditor against the debtor arose prior to the commencement of the bankruptcy case, and (3) the debt and claim are mutual obligations. *See In re Brooks Farms*, 70 B.R. 368, 371 (Bankr. E.D. Wis. 1987). The tax overpayment arose prepetition at the end of the tax year, December 31, 2012, not when the tax return was filed. *Miller v. United States*, 422 B.R. 168, 172 (W.D. Wis. 2010). When RHS paid the loss claim to JP Morgan Chase Bank in 2009, prior to the debtors' bankruptcy filing, the debtors' debt to the RHS became due and owing.

---

[1]The Treasury Department assessed a $17.00 fee for processing the setoff.

3

Case 13-20484-mdm    Doc 27    Filed 07/30/13    Page 3 of 10

Because "the federal government is considered to a be a single-entity that is entitled to set off one agency's debt to a party against that party's debt to another agency," mutuality has been established. *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998); *see also* 26 U.S.C. § 6402(d) (authorizing IRS to credit tax overpayment against governmental debt owed by individual); *In re Miller*, 414 B.R. 481, 483 (Bankr. W.D. Wis. 2009) (noting "outside the bankruptcy forum there appears little debate that the United States is considered a 'unitary' creditor, and that agencies of the United States government may set off debts owed by one agency against claims that another agency has against the same debtor").

Additionally, RHS argues that since it had not received notice of the bankruptcy petition at the time of the initial setoff and, upon receiving said notice, reversed the transaction and placed the funds in a holding account, any violation of the automatic stay was unintentional and inadvertent. RHS was not listed as a creditor in the bankruptcy schedules, it was not listed on the creditor matrix, and notice of the filing was not provided by the debtors. Immediately upon receiving notice of the bankruptcy, the account was adjusted manually and the funds were placed in suspense, pending court review of the matter. Thus, sanctions for violation of the automatic stay are not warranted.

Finally, RHS contends that discharge of the obligation does not affect the creditor's right to setoff. *See* Collier Bankruptcy Manual ¶ 553.07 (4th ed.) ("A majority of the courts that have addressed the issue answer that confirmation and discharge do not prohibit the defensive use of setoff in a subsequent action by the debtor."). In *In re Kadrmas*, No. 00-31138-7, 2000 WL 33364195 at *2 (Bankr. W.D. Wis. Sept. 19, 2000), the court found that "nothing in the Code or in the case law would indicate that discharge would bar a creditor from exercising a right to

4

setoff which existed at the time of filing the petition."

*Debtors' Argument*

In their brief in opposition to RHS's motion, the debtors question the $40,353.80 loss claim paid to JP Morgan Chase Bank, since the difference between the $71,898.91 judgment of foreclosure and the $61,965.00 creditor's bid at the sheriff's sale is only $9,933.91. The actions of RHS, along with the IRS's complicity in the setoff, amount to a "disregard of the Bankruptcy Code and in this case a possible question of fraud by someone, not the debtors." (June 28, 2013, Brief in Opposition to Motion for Relief from Automatic Stay to Effectuate Setoff, p. 2). The debtors also note that "the USDA/RHS want to imply that they have a continuing right to set-off of this debt after the bankruptcy discharge." *Id*.

The debtors argue a debtor's right to a fresh start is defeated when a court allows a creditor to set off against a dischargeable debt. They further question the reasoning of the bankruptcy court's decision in *In re Kadrmas*, No. 00-31138-7, 2000 WL 33364195 (Bankr. W.D. Wis. Sept. 19, 2000), since that court failed to recognize the intent of the Bankruptcy Code to allow debtors a fresh start and, instead, favored the actions of the creditor. *Cf. In re Riley*, 472 B.R. 422 (Bankr. W.D. Ky. 2012) (discussing different court rulings on creditor's right to setoff). Additionally, the debtors argue their tax refund was exempt property and therefore not subject to set off. *Cf. In re Gould*, 389 B.R. 105, 114-15 (Bankr. N.D. Cal. 2008) (holding, in exercising discretion whether to allow creditor to exercise alleged right of setoff, bankruptcy court to apply general principles of equity).

The debtors point out that a notice from United States Department of Agriculture regarding the payment of the loss claim provided the following: "If you are currently in

5

bankruptcy, then you are not subject to offset while the automatic stay is in effect." (February 14, 2009 Correspondence from US Dept. Agriculture, p. 2). Although the debtors failed to provide notice of the bankruptcy filing to RHS, they did notify the collection agencies, Progressive Financial Services and NCO Financial Services. The debtors question the relationship between RHS and the collection agencies, and whether such relationship results in the lack of mutuality of debt, a necessary element for setoff. Finally, the debtors argue, due to the gross miscalculation of the loss claim obligation, RHS should not be allowed to set off the debtor's tax refund under the clean hands doctrine.

*Rural Housing Service's Rebuttal*

The United States notes RHS's calculation of the loss claim was properly based, in accordance with 7 CFR § 1980.376, on the appraised liquidation value of the property, $41,000.00, which set the amount of damages payable to the original lender. Both the $41,000.00 appraised value and the secured lender's credit bid of $61,965.00, were higher than the amount of the actual eventual sale price, $22,000.00. Had the actual sale price been used to calculate the loss claim, the debtors' obligation to RHS would have been far greater. Furthermore, the debtors' allegations of fraud and unclean hands – both unsubstantiated – should be disregarded. Additionally, because "the Bankruptcy Code treats a creditor with the right of setoff as the holder of a secured claim, secured to the extent of the right of setoff," Robert E. Ginsberg, Robert D. Martin and Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 8.06[C] (2013), RHS's setoff does not negate the debtors' fresh start because all of their unsecured debts are discharged.

Regarding the debtors' argument that the setoff should be disallowed because they have

exempted the tax refund, RHS contends the debtors have not established the refund is necessary for their daily living expenses. *See In re Gould*, 401 B.R. 415, 431 (B.A.P. 9th Cir. 2009) (finding debtor's claim of exemption to provide source of income to pay living expenses unsupported by record). Additionally, the tax overpayment would only become subject to exemption after being set off against any outstanding federal agency debt. *See USDA Rural Hous. Serv. v. Riley*, 485 B.R. 361, 366-67 (W.D. Ky. 2012) (holding because amount of debtor's obligation to RHS exceeded amount of tax refund, debtor was not entitled to refund and there was nothing to become property of the estate that could be exempted).

Rural Housing Service disputes the debtors' assertion that it wilfully violated the automatic stay. The February 14, 2009, letter from the US Department of Agriculture, submitted with the debtors' brief, advised that the debt was being referred to the US Department of Treasury for collection and that the Treasury Department might refer the collection to a private collection agency. It also stated that the debtors could request review of the debt if they felt it was not due or legally enforceable. It further stated that if the debtors were in bankruptcy, the debtors were supposed to give RHS's Central Servicing Center notice of such filing. No notice was provided to RHS. Rural Housing Service further points out that the letter does not state that the debtors are not subject to offset while the debtors are in bankruptcy; rather that the debtors are not subject to offset while the automatic stay is in effect.

## DISCUSSION

Section 553 of the Bankruptcy Code provides, in relevant part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title

7

against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a). The Bankruptcy Code does not create a right to setoff; it merely preserves the right already given in a nonbankruptcy context. *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998) (permitting SBA to set off debt owed by debtors against debt owed by U.S. Navy to debtors). In order to be entitled to setoff, however, the obligations must be mutual: "[t]he right to setoff ... allows entities that owe each other money to apply their mutual debts against each other." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289 (1995). For purposes of setoff under section 553, all agencies of the United States are a single governmental unit. *Maxwell*, 157 F.3d at 1102.

The debtors argue that RHS's setoff rights are trumped by their exemption claim. Some courts have held that the government's right to setoff under section 553 must yield to a debtor's right to exemption under section 522, primarily because the right to offset does not fall within any of the exceptions to section 522(c). *See, e.g., In re Alexander*, 225 B.R. 145, 148 (Bankr. W.D. Ky. 1998); *but cf. Miller v. United States*, 422 B.R. 168, 172 (W.D. Wis. 2010) (listing cases on both sides of the issue and concluding offset may be exercised on property claimed exempt). The view that an exemption supercedes right of setoff has been explicitly rejected by the courts in the western district, *In re Miller*, 414 B.R. 481, 484 (Bankr. W.D. Wis. 2009), *aff'd*, 422 B.R. 168 (W.D. Wis. 2010); *In re Kadrmas*, No. 00-31138-7, 2000 WL 33364195 (Bankr. W.D. Wis. Sept. 19, 2000).

This Court agrees with the reasoning of Judges Martin, Utschig, and Crabb. While recognizing the inherent conflict between sections 522 and 553, those courts noted that allowing

8

section 522(c) to limit a creditors' setoff rights would contradict the Seventh Circuit's finding in *Maxwell* that the Bankruptcy Code neither expands nor constricts the common law right of setoff. *Miller*, 422 B.R. at 172-73. Another reason for allowing the setoff may be found in section 542(b)'s offset exception to the requirement that a debt owed to the estate must be paid to the trustee, which is consistent with the offset preservation provision of section 553. *Id*. at 173. Furthermore, both of these provisions can be reconciled with the exemption protection provisions of section 522(c). Once a right of offset under section 553 has been established, a debtor may claim an exemption only in the balance of the debt turned over to the estate after the offset has been exercised. *Miller*, 414 B.R. at 484. This is much like a debtor claiming an exemption in a car subject to a security interest; the exemption does not trump the secured creditor's rights in the collateral. Debtors can still exempt property from the reach of all other creditors who possess prepetition claims. *Id*.

The debtors also assert the setoff violated the automatic stay. Although RHS was entitled to a setoff against the debtor's income tax refund, doing so without first obtaining relief from the automatic stay violated the stay. Nevertheless, the violation was as much the fault of the debtors, as it was the fault of RHS. Because the debtors never included RHS on the creditors' mailing matrix, the latter was not informed of the bankruptcy filing until after it had intercepted and offset the tax refund. Therefore, this Court cannot find that the violation of the automatic stay by either RHS or the IRS was willful. *See In re Radcliffe*, 563 F.3d 627, 630 (7th Cir. 2009). ("A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action *despite the awareness of a pending bankruptcy proceeding*."). An act taken without knowledge of the stay cannot qualify as "unclean hands," as the debtor asserts.

9

Rural Housing Service took corrective measures immediately upon receiving notice of the debtors' pending bankruptcy. Furthermore, had RHS filed a motion for relief from the automatic stay prior to making the offset, this Court would have granted it in view of the fact that the government is entitled to such setoffs, as discussed above, and so no damages could have resulted from the setoff.

Finally, the calculation of the debt, to which the debtors made no timely objection, was done according to regulations applicable to the agency. There is no evidence the appraisal was prepared in bad faith, nor that any regulation was not properly followed. Other than a vague, unsupported suspicion that someone must have done something wrong, there was no equitable principle presented that would compel an exception to a valid right of setoff in this case.

Based on the foregoing, Rural Housing Service's motion for relief from the automatic stay to effectuate a transfer of funds under the Treasury Offset Program is granted. A separate order consistent with this decision will be entered.

July 30, 2013

Margaret Dee McGarity
United States Bankruptcy Judge